

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
November 23, 2020 05:18 PM
       AFTAB PUREVAL
      Clerk of Courts
    Hamilton County, Ohio
   CONFIRMATION 1009005
```

**MARY BAYS**　　　　　　　　　　　　**A 2004115**

　　**vs.**

**FIFTH THIRD BANK NA**

## FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 10


VERIFY RECORD

EFR200

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARY BAYS<br>2507 Spindelhill Dr.<br>Cincinnati, OH 45230 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) | |
| v. | )<br>)<br>) | |
| FIFTH THIRD BANK, N.A.<br>5050 Kingsley Dr.<br>Cincinnati, OH 45227 | )<br>)<br>)<br>) | |
| | ) | **COMPLAINT FOR DAMAGES** |
| **Serve Also:** | ) | **AND INJUNCTIVE RELIEF** |
| Fifth Third Bank, N.A.<br>c/o Corp. Service Co. (Stat. Agent)<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | )<br>)<br>) | |

Plaintiff MARY BAYS by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Bays is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant FIFTH THIRD BANK, N.A. ("Fifth Third") is a foreign corporation that conducts business within the state. The relevant location of the events and omissions of this Complaint took place was 5050 Kingsley Dr., Cincinnati, OH 45227 and the areas Fifth Third serves.

3. Fifth Third is, and was at all times hereinafter mentioned, Bays' employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §2000e and R.C. § 4112.01(A)(2).

## JURISDICTION & VENUE

4. Within 300 days of the conduct alleged below, Bays filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-01149) against Defendant ("EEOC Charge").

5. On or about September 10, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Bays regarding the EEOC Charge.

6. Bays received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

7. Bays has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

8. Bays has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

9. All of the material events alleged in this Complaint occurred in Hamilton County, Ohio.

10. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

11. Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3), (6) and/or (7).

## FACTS

12. Bays is a former employee of Fifth Third.

13. At all times noted herein, Bays was qualified for her position with Fifth Third.

14. At all times noted herein, Bays could fully perform the essential functions of her job, with or without a reasonable accommodation.

15. Bays is African American, and thus is in a protected class for her race.

2

16. Bays worked for Fifth Third Bank as a call center representative from March 11, 2019, until Fifth Third placed Bays' employment on permanent administrative leave or about August 8, 2019.

17. Bays was never recalled back to work after this leave, effectively making it her termination.

18. Bays initially interviewed with Dan Barlow (call agent supervisor, Caucasian) and Tanya (LNU, call center supervisor, African-American) and was offered the position fairly quickly.

19. Bays spent several weeks in her initial training class, then the class was split into groups under different supervisors. Bays joined Barlow's group when the class was split.

20. In or around mid-June 2019, Bays had her first performance evaluation.

21. Barlow explained to Bays that her customer calls were too long, she was averaging around four minutes per call, when she should be aiming at two and a half minutes per call.

22. Despite the length of her calls, Bays was rated as "Outstanding" in the formal evaluation scorecards that followed the discussion with Barlow, in or around late June or early July 2019.

23. In or around mid-July 2019, Bays was speaking with a customer about a Zelle (a cash-transfer application) account.

24. Bays, when discussing the customer's issues with the app, asked the customer if they had Zelle's customer service number (a 1-800 number that could easily be found online).

25. The customer did not, so Bays gave the customer the phone number.

26. Bays had learned of this number from a coworker (Jasmine (LNU), call center representative, African American) and had given the number to several other customers.

27. Fifth Third was aware that Bays had previously given out the number, it was no issue at that time.

28. Barlow had also audited several of Bays' calls prior to that point, her only issues were the call lengths.

29. On or about August 8, 2019, Tessa (LNU, call center manager, Caucasian) brought Bays into a meeting with a Fraud Department investigator (name unknown, male, Caucasian, "fraud investigator") and an HR representative (name unknown, female, Caucasian).

30. Notably, Barlow was not in this meeting as he was on vacation. Tessa (LNU) also did not attend but told Bays to bring her badge.

31. The fraud investigator asked Bays to tell him about Zelle.

32. Bays said she didn't assist customers with their Zelle needs but gave out Zelle's customer service hotline as needed; she had been giving out the number since March 2019.

33. The fraud investigator then asked Bays where she got the number and Bays told him from whom she had learned it and that she had had it posted on her cubicle wall for some time.

34. Bays also told the fraud investigator of her coworkers who were also giving out the phone number and noted that the number was also on Zelle's website.

35. The fraud investigator continued to badger Bays and accused her of giving out a phone number without knowing what it was for.

36. Bays pushed back, reiterating that the number was on Zelle's website and was posted on employees' desks.

37. The fraud investigator grew angry, asked Bays if she knew who he was, and told her to "cut the BS."

38. The fraud investigator then asked who Bays worked for and suggested her father or her uncle. Bays had no idea what she was being accused of.

39. The fraud investigator told Bays that the fraud number she had given out had scammed a customer out of approximately $2,000 back in July 2019.

40. The fraud investigator said the customer had spoken with a "foreign man," which the investigator assumed was one of Bays' older, male relatives.

41. Notably, Bays and her family are not foreign, but the accusation illustrated an obvious racial bias.

42. The HR representative tried to jump in at that point as the conversation had gotten heated.

43. HR asked Bays why she gave out the number and Bays replied because it was posted anyway for customers to call.

44. Bays continued, saying stealing two thousand dollars was not worth losing a good job.

45. The fraud investigator accused her of lying, which Bays, of course, denied.

46. Bays offered to take a lie detector test, but the investigator reiterated that he didn't care what she said or what the test would say, he knew she was a liar and that she was "full of it."

47. The fraud investigator asked once again if Bays knew who he was. Bays sarcastically replied asking if he knew who she was.

48. HR suggested the investigator give Bays his card, but he did not have one.

49. Bays was then placed on administrative leave pending an investigation and was escorted out of the building.

50. Since that day, Bays has never heard again from Fifth Third, and so assumes her employment has been terminated due to the investigation.

51. Defendant's termination of Bays was an adverse employment action against her.

52. Defendant's purported reason(s) for Bays' termination was pretextual.

53. Defendant actually terminated Bays' employment discriminatorily against her race.

54. As a result of the above, Bays has suffered damages.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq*.**

55. Bays restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

56. Bays is African American, and thus is in a protected class for her race.

57. R.C. § 4112 *et seq*. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

58. Defendant treated Bays differently than other similarly situated employees based upon her race.

59. Defendant's termination of Bays was an adverse employment action against her.

60. Defendant's purported reason(s) for Bays' termination was pretextual.

61. Defendant actually terminated Bays' employment due to her race.

62. Defendant violated R.C. § 4112 *et seq*. by terminating Bays because of her race.

63. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Bays differently from other similarly situated employees outside her protected class.

64. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Bays' race.

65. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Bays' race.

66. Bays incurred emotional distress damages as a result of Defendant's conduct described herein.

67. As a direct and proximate result of Defendant's acts and omissions, Bays has suffered and will continue to suffer damages.

### COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

68. Bays restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

69. Bays is African American, and thus is in a protected class for her race.

70. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

71. Defendant treated Bays differently than other similarly situated employees based upon her race.

72. Defendant's termination of Bays was an adverse employment action against her.

73. Defendant's purported reason(s) for Bays' termination was pretextual.

74. Defendant actually terminated Bays' employment due to her race.

75. Defendant violated Title VII by terminating Bays because of her race.

76. Defendant violated Title VII by treating Bays differently from other similarly situated employees outside her protected class.

77. Defendant violated Title VII by applying its employment policies in a disparate manner based on Bays' race.

78. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Bays' race.

79. Bays incurred emotional distress damages as a result of Defendant's conduct described herein.

80. As a direct and proximate result of Defendant's acts and omissions, Bays has suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Bays demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Bays for physical injury, physical sickness, lost wages, emotional distress,

8

and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Bays' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

9

Respectfully submitted,

  /s/ Matthew Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Mary Bays*

## JURY DEMAND

Plaintiff Mary Bays demands a trial by jury by the maximum number of jurors permitted.

  /s/ Matthew Bruce
Matthew G. Bruce (0083769)